**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RONNIE LAMAR JONES,**

      **Petitioner**

**-vs-**                                                                                  **Case No.  8:02-cv-2262-T-27EAJ**

**JAMES V. CROSBY, et al.,**

      **Respondents.**

_____/

## ORDER

Petitioner, a Florida inmate, initiated this action *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).  Petitioner is challenging his 1999 convictions entered by the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent has filed a response to the amended petition (Dkt. 10), and Petitioner has filed a reply thereto (Dkt. 15). The matter is now before the Court for consideration of the merits of the petition.

## Background

Petitioner was charged by information on July 27, 1998, with first degree attempted murder, sexual battery by placing his penis into or in union with the vagina and/or anus of the victim, and tampering with a witness.  Represented by counsel, Petitioner proceeded to a trial by jury on an amended information on April 6, 1999. Having been found guilty of second degree attempted murder (Count I) and sexual battery (Count II), Petitioner was

sentenced as an habitual felony offender and prisoner releasee reoffender,[1] to a term of 30 years in prison on Count I and life in prison on Count II, with the sentences to run concurrently.

Represented by an assistant public defender, Petitioner raised the following issues on direct appeal:

1. Whether the circumstantial evidence of [Petitioner's] culpable intent was sufficient as a matter of law;

2. The trial was tainted by improper and unduly prejudicial testimony as to "prior bad acts" by [Petitioner].

3. Trial was tainted by the improper admission of cumulative and prejudicial "excited utterance" hearsay.

(Dkt. 10, Ex. 002).   On June 16, 2000, the state appellate court affirmed Petitioner's convictions, *per curiam*, without written opinion.   *Jones v. State*, 763 So. 2d 326 (Fla. 2d DCA 2000) (table decision). The mandate issued July 19, 2000 (Dkt. 10, Ex. 005).

On February 28, 2001, Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 raising five grounds for relief (Dkt. 10, Ex. 006). Petitioner amended his Rule 3.850 motion to assert two additional grounds for relief on April 11, 2001, and August 22, 2001, *see* Dkt. 10, Exs. 007 and 008.

On August 30, 2001, the state trial court granted Petitioner partial relief by amending his life sentence on the sexual battery conviction by striking the habitual felony offender designation, and summarily denied the remaining claims for relief (Dkt. 10, Ex. 010).   The state appellate court affirmed the state trial court's decision denying Petitioner's Rule 3.850

---

[1]Following his conviction in Pinellas County, Florida, of throwing a deadly missile at, into, or within a building, Petitioner was sentenced on November 14, 1994, to a 35-month term of imprisonment. Petitioner was placed in the custody of the Florida Department of Corrections, where he remained until his release on July 10, 1996. *See* Dkt. 10, Ex. 001 at R. 58. The offenses of conviction that are the subject of the instant petition occurred on July 7, 1998.

motion on November 9, 2001. *Jones v. State*, 808 So. 2d 221 (Fla. 2d DCA 2001) (table decision). The mandate issued on February 5, 2002 (Dkt. 10, Ex. 015).

On August 17, 2001, Petitioner filed a state habeas petition alleging that he was denied his Sixth Amendment right to effective assistance of counsel on direct appeal (Dkt. 10, Ex. 009). Petitioner faulted appellate counsel for not raising issues that he claimed were apparent in a portion of the transcript which was not included in the appellate record and for failing to raise a sentencing error. On July 18, 2002, the state appellate court denied the petition without written opinion (Dkt. 10, Ex. 016). Petitioner's motion for rehearing was denied (Dkt. 10, Ex. 017).

Petitioner filed his petition for federal habeas relief pursuant to 28 U.S.C. § 2254 on December 5, 2002 (Dkt. 1).  Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, the Court agrees.

**Standard of Review**

Pursuant to 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.  *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

## Evidentiary Hearing

The Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. *See Smith v. Singletary*, 170 F3.d 1051, 1053-54 (11th Cir. 1999). The pertinent facts of the case are fully developed in the record before the Court. *See Cave v. Singletary*, 971 F.2d 1513, 1516 (11th Cir. 1992). Thus, no additional evidentiary proceedings are required. *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

-4-

**Discussion**

In his petition, Petitioner raises 10 grounds for relief, asserting that he was denied his right to effective assistance of counsel at trial (Grounds One through Eight) and on appeal (Grounds Nine and Ten), see Dkt. 1, Exs. A and B.  The eight claims of ineffective assistance of trial counsel were raised in Petitioner's Rule 3.850 motion, and the two grounds of ineffective assistance of appellate counsel were raised in Petitioner's state habeas petition.

To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficient performance is performance which is objectively unreasonable under prevailing professional norms.  *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

The *Strickland* standard of review also applies to ineffective assistance of appellate counsel claims.  *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.  The Court suggested that effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious.  *Id.* at 751-52.

In its order granting, in part, and denying, in part, Petitioner's Rule 3.850 motion, the state trial court correctly identified the Supreme Court holding applicable to the review of ineffective assistance of counsel claims, stating as follows:

> Overall, Defendant raises the claim of ineffective assistance of counsel. To successfully argue a claim of ineffective assistance of counsel, Defendant must prove that counsel's performance was deficient and that deficiency caused Defendant to suffer prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the prejudice test the Defendant must show that a reasonable probability exists that the outcome would have been different absent the ineffective assistance. *See id.*; *See Haliburton v. Singletary*, 691 So. 2d 466 (Fla. 1997).

Dkt. 10, Ex. 10 at 2. Thus, to prevail on his request for federal habeas relief, Petitioner must demonstrate that in reaching its decision rejecting his claims, the trial court (1) unreasonably applied *Strickland's* two prong test to the facts of his case; (2) unreasonably extended the scope of *Strickland* to a new context where it should not apply; or (3) unreasonably refused to extend that principle to a new context where it should apply. *See* 28 U.S.C. § 2254(d). The "unreasonable application" inquiry requires the court to determine whether the application was objectively unreasonable. *Penry*, 532 U.S. at 792; *Williams v. Taylor,* 529 U.S. 362, 409 (2000).

**Ground One**

In his first claim for relief, Petitioner asserts that trial counsel was ineffective for failing to permit Petitioner to explain to the jury the nature or circumstances surrounding his 11 prior felony convictions (Dkt. 1, Ex. A at 1). When Petitioner testified on cross-examination that he had 11 felony convictions, the prosecutor announced that he had no further questions. When trial counsel stated that he did not wish to ask Petitioner anything on redirect, Petitioner indicated that he wanted to ask trial counsel a question. The state trial court informed Petitioner that he was not allowed to question trial counsel while on the

witness stand.  Petitioner informed the state trial court that he wanted to "finish about those felonies." When trial counsel requested permission to confer with Petitioner, the state trial court responded "there's no question before the court.  What says the defense?"  Trial counsel then rested his case.

Petitioner asserts that trial counsel "should have allowed him to delve into the nature of the crimes to show whether they materially affected his character and credibility wherein Petitioner's prior convictions were for drug offenses, and not sex crimes" (Dkt. 1, Ex. A at 1).

In its decision rejecting this claim, the state trial court found:

Next, Defendant claims that counsel was ineffective by failing to permit Defendant to explain the nature or circumstances surrounding his eleven prior felony convictions. Specifically, Defendant desired to inform the jury that his prior offenses were mainly drug offenses and not sex crimes. Basically, information permitted on prior offenses is very limited in scope. This information is presented to the jury so they can properly evaluate the witness's credibility. It is not proper for counsel to inquire in great detail regarding the convictions. [See Exhibit 2: Excerpts of Trial Transcript, pgs. 92-3.] It does not boost Defendant's credibility that his past offenses were drug related and not sex crimes. The fact remains that Defendant has a criminal tendency and that behavior pattern is properly presented to the jury.

Defendant has not shown that counsel's performance was deficient or that reasonable probability exists that the outcome of the trial would be different if Defendant was permitted to expound on his past convictions. In fact, defense counsel, in closing argument, attempted to persuade the jury that Defendant's prior history had no bearing on this case. [See Exhibit 3: Excerpts of Trial Transcript, pgs. 114-15.] Therefore, this claim is without merit and is denied.

Dkt. 10, Ex. 10 at 4.

In Florida, when a defendant elects to testify, the State may ask him if he has had any felony convictions, and if so, the number of convictions. *Lawhorne v. State*, 500 So.2d 519, 522 (Fla. 1986). The State is, however, precluded from inquiring about the nature of

the defendant's previous convictions. *Id. (*citing *McArthur v. Cook*, 99 So.2d 565, 567 (Fla. 1957)). Petitioner complains that he should have been allowed to explain the nature of his 11 convictions so the jury would know that none of his prior convictions was for a crime that was sexual in nature.

When trial counsel announced that Petitioner wished to testify, the state trial court asked Petitioner if he was aware that he would be questioned about his prior convictions. Petitioner acknowledged that he had been advised that he would be questioned in this regard.   The trial was recessed for 10 minutes before Petitioner was called to testify. Petitioner thus had an opportunity to confer with trial counsel prior to taking the stand.

Generally, a witness may be questioned regarding the number and nature of prior convictions on the theory that prior convictions have probative value, *see* Fla. Stat. § 90.610, and that probative value is likely to vary depending on the number and type of convictions. When a defendant takes the witness stand to testify in his own defense, he puts his reputation for truth and veracity in issue and the prosecution may attempt to impeach his credibility by presenting evidence of prior felony convictions. *Baxter v. State*, 294 So.2d 392, 393 (Fla. 2d DCA 1974).

The proper procedural approach is simply to ask the witness the straight-forward question as to whether he had ever been convicted of a crime.  *McArthur v. Cook*, 99 So.2d 565, 567 (Fla.1957). Where, as in the present case, the witness admits prior conviction of a crime, the inquiry by the State may not be pursued to the point of naming the crime for which the defendant was convicted. *Id.; see also Mead v. State*, 86 So.2d 773, 774 (Fla. 1956). However, in Florida courts, "[i]f the witness so desires he may of his own volition state the nature of the crime and offer any relevant testimony that would

eliminate any adverse implications;  for example, the fact that he had in the meantime been fully pardoned or that the crime was a minor one and occurred many years before." *McArthur v. Cook*, 99 So.2d at 567.  *See also  Bibbs v. State*, 801 So.2d 235, 236 (Fla. 2d DCA 2001) (trial court erred in refusing to allow defendant to testify that all of his prior convictions stemmed from guilty pleas.).

The trial transcript demonstrates that trial counsel made a tactical decision not to attempt to rehabilitate Petitioner on redirect. *See McArthur v. Cook*, 99 So.2d at 567. As noted in *Spaziano v. Singletary*, the Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved. 36 F.3d 1028, 1039 (11th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995). Intensive scrutiny and second-guessing of attorney performance are not permitted. *Id.*

Every effort should be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  The Eleventh Circuit has reiterated that effective assistance of counsel does not mean errorless assistance, and that an attorney's performance is to be judged on the totality of the circumstances in the entire record rather than on specific actions. *Green v. Zant*, 738 F.2d 1529, 1536 (11th Cir.), *cert. denied*, 469 U.S. 1098 (1984).

Here, trial counsel's decision to forego inquiry which would reveal to the jury details of Petitioner's criminal past was objectively reasonable under prevailing professional norms. *See Strickland*, 466 U.S. at 688.

The record supports the state trial court's decision that Petitioner failed to establish that trial counsel's performance was deficient when he failed to elicit testimony regarding

the nature of Petitioner's prior felony convictions. Petitioner has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.

Further, the state court's decision on this claim was not "contrary to" clearly established federal law as determined by the United States Supreme Court, nor did it involve an "unreasonable application" of such law. 28 U.S.C. § 2254(d)(1). Petitioner has failed to establish entitlement to federal habeas relief on this issue.

**Grounds Two and Six**

In Grounds Two and Six, Petitioner challenges trial counsel's decision not to present expert testimony regarding fluid samples taken from the victim during the medical examination performed following the attack. Because these issues are inextricably intertwined, they will be discussed together.

In Ground Two, Petitioner alleges that his trial counsel was ineffective for failing to engage in any adequate and meaningful pre-trial investigation or call expert witnesses to support Petitioner's defense. Petitioner asserts that expert testimony regarding the results of the S.A.V.E. kit being "negative for spermatozoa, sperm or blood" would have cast reasonable doubt on the alleged sexual battery and would have damaged the victim's credibility and testimony.  Petitioner speculates that a comparison of the fluid samples taken from the victim's genitalia compared with the alleged acne lotion allegedly used as a lubricant when initial efforts at penetration proved unsuccessful would have established that "there was no 'encounter with the victim's sex organs'" (Dkt. 1, Ex. A at 4). In Ground Six, Petitioner claims that trial counsel was ineffective for failing to properly conduct or engage in adequate and meaningful pre-trial investigation or to call expert witnesses in

support of his defense. Both of these claims were raised in Petitioner's Rule 3.850 motion.

In considering the claim raised in Ground Two, the state trial court found:

> Defendant alleges that counsel was ineffective for failing to "engage in any adequate and meaningful pre-trial investigation or call expert witnesses to support Defendant's defense." Defendant, in particular, cites that counsel failed to call Ms. Patricia A. Bencivenga, with the Florida Department of Law Enforcement crime laboratory, as a defense witness. Defendant contends that Ms. Bencivenga testimony would have revealed that the results of the FDLE report were negative for spermatozoa, sperm and blood and that would cause a reasonable doubt as to whether sexual battery occurred.
>
> Defendant is correct in noting that the FDLE reports were negative for spermatozoa, sperm and blood. [See Exhibit 4: Report.] However, evidence was presented at trial that Defendant never ejaculated because the police intervened. [See Exhibit 5: Excerpts of Trial Transcript, pgs. 19-20, 28-9.] This evidence supports the negative test results. [See Exhibit 10: Excerpts of Trial Transcript, p. 51.] [See Exhibit 12.] Therefore, it would be illogical, and not beneficial to Defendant, to have this testimony presented about the negative results when Defendant did not ejaculate.
>
> Furthermore, to successfully sustain a sexual battery charge, it is not necessary for the State to prove that an ejaculation occurred. The act of sexual battery occurs when the sexual organ of one individual comes in contact with another person's sexual organ against their will. There is no requirement that an ejaculation be proven to satisfy all the elements of sexual battery. [See Exhibit 6: Excerpts of Trial Transcript, p. 141-2.] [See Exhibit 7: Jury Instructions.] Therefore, it is irrelevant whether testimony was presented regarding the test results. Thus, this claim is without merit and is denied.

(Ex. 010, p. 4-5).

Petitioner also complains that his trial counsel should have also questioned the presence of acne lotion. This issue is raised separately in Ground Six. In rejecting this claim, the state trial court found:

> Defendant claims that, counsel was ineffective for failing to properly conduct or engage in adequate and meaningful pre-trial investigation or to call expert witnesses in support of his defense. Specifically, Defendant contends that counsel failed to call an independent medical expert to evaluate and examine the contents of the fluid samples. Furthermore, Defendant argues that the fluid sample was a material factor to determine guilt or innocence.

In fact, the fluid sample was tested and was determined to be consistent with a type of lotion. [*See* Exhibit 10: Excerpts of Trial Transcript, pgs. 47-52.] This scientific evidence is consistent with the victim's testimony, who testified that Defendant used an acne lotion as lubricant. In addition, the evidence at the scene included a bottle of acne lotion in the vicinity of the offense, supports the test's result. Also, in light of the evidence presented, that included two eyewitnesses and overwhelming physical evidence (as discussed throughout this Order), the Court does not determine that Defendant's innocence or guilt was based upon the identification of the fluid. The Defendant has failed to prove that counsel's performance was deficient or that he suffered prejudice as a result of that alleged deficient performance. Furthermore, the Court finds that the omission of an independent medical expert is a harmless error since there is no reasonable probability that the trial outcome would have been different.

This claim is denied.

(Ex. 010, p. 7-8).

This Court has reviewed the record and finds that the state trial court's finding that the fluid sample was tested and was determined to be consistent with a type of lotion is incorrect.  The nurse practitioner testified that the fluid found at the opening of the anal area was "consistent with some type of lotion" (Dkt. 10, Ex. 001 at Tr. 51). The testing to which she referred was for the presence of semen in fluid samples taken from the victim during the examination.  *Id*.  This error does not work to Petitioner's favor, however.

As the state trial court stated in rejecting Petitioner's claim that trial counsel should have presented testimony regarding the S.A.V.E. kit, the record reflects that the absence of spermatozoa, sperm and blood may be due to the officers' intervention prior to ejaculation.  Moreover, Petitioner was charged with sexual battery by "union" with the victim's vagina and/or anus <u>or</u> penetration of the victim's vagina and/or anus.  The testing Petitioner contends his attorney was ineffective in not pursuing would not negate the charge of sexual battery.

Petitioner's assertion that trial counsel was ineffective for not presenting testimony regarding the fluid samples taken from the victim likewise lacks merit.  First, the victim testified that Petitioner did not resort to using the acne lotion as a lubricant until his efforts at dry penetration failed.  The State also adduced testimony from the nurse practitioner who examined the victim that the discoloration in the vaginal and anal areas was consistent with unlubricated sexual relations (Dkt. 10, Ex. 001 at Tr. 51). Thus, there was ample evidence that the acts constituting a sexual battery were complete before Petitioner resorted to the use of the acne lotion.  Thus, even if the tests Petitioner contends trial counsel should had performed demonstrated that the fluid on the victim was not acne lotion, he cannot show that he was prejudiced by not pursuing this as a defense to the charge of sexual battery.

Petitioner is again using hindsight to question trial counsel's tactical decision not to pursue this line of defense. Given the nature of the charge, the fact that there was no test of the fluid to see whether it was, in fact, acne lotion does not satisfy the prejudice prong of the *Strickland* test because the absence of the lotion would not establish that Petitioner did not have sexual contact with the victim before applying the lotion. Trial counsel is not ineffective for failing to pursue meritless issues. Having failed to establish that he was prejudiced by trial counsel's allegedly deficient performance, Petitioner cannot satisfy *Strickland*'s two-prong test. Under *Strickland,* the court need not address the deficiency component of the ineffective assistance claim because failure to satisfy the prejudice component is dispositive. *Id.* 466 U.S. at 697.

The state court's finding that trial counsel was not ineffective for failing to present testimony regarding the S.A.V.E. kit and the composition of the fluid found on the victim

is not objectively unreasonable.  Its disposition of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law; nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). The Court finds, therefore, that Petitioner is not entitled to relief  on these two claims.

**Ground Three**

Petitioner asserts in Ground Three that his attorney was ineffective for failing to discredit the victim by fully exploring her "mental illness" (Dkt. 1, Ex. A at 5).  According to Petitioner, evidence of the victim's mental illness would establish whether the victim's "testimony was based on facts as she perceived them or whether it was the product of a 'Psychotic Hallucination,' especially where credibility was the sole issue" (emphasis in original).  *Id*.  Petitioner further argues that his attorney was ineffective for not requesting that the state trial court order the victim to undergo a competency examination.

Petitioner raised this claim in his Rule 3.850 motion.  In rejecting the claim, the state trial court found as follows:

> Next, Defendant claims that counsel was ineffective for failing to fully explore the victim's mental capacity and discredit her credibility. Defendant contends the jurors should have had the "full benefit of hearing fully about the witness's mental capacity" so they could decide whether her testimony was "based on facts . . . or whether it was the product of a psychotic hallucination."
>
> Defendant is correct in noting that the State questioned the victim regarding her mental illness and medications. [*See* Exhibit 8: Excerpts of Trial Transcript, pgs. 44-5.] During her testimony, the victim stated that on the night of the offenses she was not suffering from any kind of mental illness. [*See* Exhibit 8.] In addition, the victim stated that her medication did not have a negative affect on her memory and enabled her to think "more clearly." [*See* Exhibit 8.] Given the victim's testimony, that her memory was not affected, Defendant has not shown that counsel was deficient for failing to inquire further into the victim's mental health.

> In addition, given the two police officer's [sic] eyewitness testimony and the physical evidence, it is highly unlikely the event was a psychotic hallucination. In order for this to be a product of the victim's psychotic hallucination, the police officers, medical personnel, and the entire Court system would also have to be hallucinating. Does the Defendant expect the Court to believe that the victim hallucinated the physical evidence presented at trial, specifically red marks and bruises around her neck, vaginal and anal areas?
>
> Defendant has failed to prove that counsel's performance was deficient and that he suffered prejudice as a result of the deficient performance. The claim is denied.

Dkt. 10, Ex. 10 at 5-6.

The transcript confirms that the jury heard testimony by the victim regarding her mental problems. Under the circumstances, an attack on the victim's credibility based on her mental illness would entail the risk of alienating the jury with Petitioner having little, if anything, to gain given the eye-witness testimony by the officers and the independent physical evidence corroborating the victim's account of the attack.  Moreover, the mere fact that a victim has a history of mental problems is not enough to compel an evaluation.  *See Simmons v. State,* 683 So.2d 1101, 1105 (Fla. 1st DCA 1996); Fulton v. State*,* 352 So.2d 581 (Fla. 3d DCA 1977).

Petitioner's contention that his attorney should have asked the state trial court to order a competency examination of the victim likewise lacks merit.  Following the majority rule that a court has the discretion to order a psychological examination of a victim under certain circumstances, *see State v. Coe*, 521 So.2d 373 (Fla. 2d DCA 1988), the Florida Supreme Court has recognized that "credibility may be a reason to order . . . [a psychological] examination [of the victim], but only if *there is strong and compelling evidence." Camejo v. State*, 660 So.2d 242, 243 (Fla. 1995) (finding that the defendant in a sexual battery prosecution must "present sufficiently compelling evidence to justify

ordering the examination for the purpose of helping him attack her veracity and credibility."). Petitioner has not shown that trial counsel could "demonstrate any compelling or extreme circumstances which could establish the need for a psychological evaluation of the victim." *Id*.

A determination of competency by the trial court is not required unless it is at issue in the trial as a result of an objection by counsel. *Lloyd v.* State, 524 So.2d 396, 399-400 (Fla.1988). The victim was 28 years old when the attack occurred.  The record reflects that when she appeared to testify, she was aware of her surroundings and the significance of the proceedings.  The transcript of her testimony reveals that her responses to questions were relevant, coherent, and appropriate. Nothing in the record indicates that the victim's behavior was irrational or that her demeanor was inappropriate to the setting.  The victim testified that she had previously been treated for depression and mental illness but on the night the attack occurred she was not suffering any of the symptoms of mental illness. The victim testified that she was taking medication at the time which actually enabled her to think "more clearly" (Dkt. 10, Ex. 001 at Tr. 44-45).

Petitioner has not demonstrated that the victim's mental competence was otherwise put at issue.  Trial counsel is not ineffective for failing to raise a meritless or frivolous issue.  Thus, the trial court's finding that Petitioner failed to establish either prong of the *Strickland* test is objectively reasonable.

The Court finds that Petitioner has failed to establish that the trial court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Thus, this claim lacks merit.

**Ground Four**

Petitioner next contends that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing argument. Petitioner complains that the prosecutor (1) made comments based on his personal opinions, feelings, and belief that were allegedly  inconsistent with the evidence, (2) bolstered the credibility of the victim and police officers, and (3) ridiculed the Petitioner and his defense (Dkt. 1, Ex. A at 7).  These arguments were raised in Petitioner's Rule 3.850 motion.  In denying the motion, the state trial court found:

> Defendant contends that counsel was ineffective for failing to object to inappropriate and prejudicial comments during the State's closing argument. [*See* Exhibit 9: Excerpts of Trial Transcript, pgs.117-35.]
>
> First, the Court must examine these statements in the context of the closing argument. *See Garcia v. State*, 644 So. 2d 59, 62 (Fla. 1994). Also, the Court must consider whether these statements merit a new trial by specifically evaluating whether the remarks have deprived Defendant of a fair trial, materially contributed to the conviction, or are so inflammatory that the statements influenced the jury to reach a more severe verdict than it would have otherwise. *See Brown v. State*, 754 So. 2d 188 (Fla. 5th DCA 2000). Here, the Court finds that the statements to [sic] do not present such egregious conduct as to deny Defendant a fair trial, materially contribute to the conviction or inflame the jury to reach a more severe verdict. Therefore, this claim is without merit and is denied.

Dkt. 10, Ex. 10 at 6-7.

In considering a claim that the prosecutor's comments to the jury during closing argument violated the petitioner's right to a fair trial, federal habeas corpus review is "the narrow one of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  To amount to a constitutional violation, the prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id*. at 644, *see also Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986). Closing argument is

intended to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984).

Petitioner complains about the following comments made by the Prosecutor during his closing:

> Prosecutor:   They didn't even know what they were going to see when they opened the door and they were shocked, saw what they described.
>
> So what does he have left. Literally, you know, caught with his pants down as they say. He's there choking her out. He's got an erection, she's calling out for help, you know, what is he suppose[d] to do. All he's got left is denial. His testimony was like an old Richard Pryor joke I heard one time. Said he was in bed with another woman, his wife comes in, how could you, you're cheating on me. He said, baby, you going to believe me or your lying eyes. He's caught in the act. He's denying.

Dkt. 10, Ex. 001 at Tr. 118-19.

> Prosecutor:   Beth, she can't answer all of your questions with a very traumatic incident she was going through. She told you forthrightly that, you know, everything was so traumatic and she didn't remember exactly the total sequence of the things that occurred and I submit to you that for somebody placed in this situation being choked out, being raped and threatened to kill and things are going a little fast and if she didn't remember the exact sequence of every minor detail it's quite reasonable and understanding [sic].

Dkt. 10, Ex. 001 at Tr. 121.

> Prosecutor:   Everything backs up everything this lady said and it doesn't support anything he has to say. Mr. eleven-time convicted felon versus she's not been convicted of any kind of crime. How could it reasonably be said that there was any consent whatsoever just based on without even hearing, you know from her, just from what the officers walked into. This is the kind of crime that normally the perpetrator doesn't try to do this in the middle of Tampa stadium where people can see him. He does it in a secretive manner, he tried to keep it a secret. He's pulling the phone off the hook. They came in and caught him and his only shot here is to say, didn't happen not me. It didn't happen. She, I guess she just snapped.

Dkt. 10, Ex. 001 at Tr. 126-27.  Petitioner argues that trial counsel was ineffective for failing to object and preserve this issue for appellate review because "the jurors should hear and weigh 'ONLY' the evidence and not the . . . prosecutor's opinions, feelings or beliefs" (emphasis  in original) (Dkt. 1, Ex. A at 9).

Attorneys have considerable leeway in closing argument to lay out the facts and reasonable inferences to be drawn from them.  *See United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984); *Franqui v. State*, 804 So.2d 1185, 1195 (Fla. 2001). Improper remarks will compel habeas corpus relief if they are so egregious as to render the proceedings fundamentally unfair. *See Spivey v. Head*, 207 F.3d 1263, 1275-76 (11th Cir. 2000); *Cargill v. Turpin*, 120 F.3d 1366 (11th Cir. 1997). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceedings cannot be said to have been fundamentally unfair." *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), *cert. denied*, 480 U.S. 911 (1987).

During the trial, the testimony established that the Petitioner and the victim met while waiting for a bus. Petitioner visited the victim several times over the following two weeks. Petitioner was living at a transit center operated by the Salvation Army and working at a dry cleaners when he met the victim. According to Petitioner, he and the victim had engaged in heavy petting and she had previously performed fellatio on him.  The victim testified, however, that although Petitioner made it plain that he was interested in her sexually, she had made it plain that she was not interested in a sexual relationship and she had not engaged in any sexual activity with Petitioner before the attack.

According to Officer Stewart, on the evening of July 6, 1998, Petitioner and the victim argued because he brought marijuana into her apartment.  The victim then asked

him to leave.  Petitioner left and then returned to retrieve some clothes he left behind.  The victim asked Petitioner to leave again when she found some money missing and thought Petitioner had taken it.  The victim called the police and officers came to the apartment but Petitioner had already left. *See* Dkt. 10, Ex. 001 at Tr. 27.

The victim and Petitioner testified that he was at the victim's home on the evening of July 6, 1998.  Petitioner's visit was initially cordial.  At this point, their recall of events diverge.

According to the victim, she "kicked [Petitioner] out" of her apartment after they argued.  Petitioner returned between 6:00 and 6:30 a.m. the following morning asking to talk with her.  According to the victim, once she allowed Petitioner inside the apartment, he sat down on the couch and began to remove his clothing.  The victim attempted to call 911, but Petitioner kept unplugging the telephone base from the wall.

The victim had an upset stomach and went into the bathroom.  When she came out, Petitioner stepped out of her bedroom door and grabbed her from behind, looping his belt around her throat.  He threw her to the floor.  At some point, Petitioner pushed a stuffed animal into the victim's mouth to keep her from screaming.  According to the victim, he also placed a pillow over her head and smothered her as he attempted to muffle her cries. When the victim attempted to call for help, Petitioner would tighten the belt a little more, saying that he was going to kill her.

When his attempts to penetrate the victim's vagina and anus without lubrication failed, he left her lying on the floor and walked into the bathroom and obtained a bottle of acne lotion.  Using the acne location as a lubricant, Petitioner continued the attack.  The victim heard the officers knock at the door and attempted to call out.  She managed to

reach up and unlock the door.  When the officers entered the room, Petitioner was still standing over the victim pulling on the belt around her neck.  *See* Dkt. 10, Ex. 001 at Tr. 34-46.

Although Petitioner kept unplugging the telephone, one of the victim's 911 calls did registered as a "hangup" at the Clearwater Police Department before being disconnected. Clearwater Police Officers Stewart and Horning were dispatched to the victim's apartment.

When they arrived at the apartment no one answered the door but they heard a scream from inside.  Officer Stewart attempted to open the door but discovered that it was locked. Based on his experience, Officer Horning concluded that due to the way the door was hung, it would be impossible to kick in from the outside.

Officer Horning checked the window to see if he could determine what the situation was inside the apartment.  Officer Stewart testified that when he saw Officer Horning "look[] at [him] in a very shocked manner," he knew that they needed to get inside quickly.  He began to try to talk to the people inside, asking them to open the door.  As Officer Horning prepared to kick in the window, the door handle moved and Officer Stewart was able to swing the door open.

Officer Stewart testified that when the door opened, he saw Petitioner, naked, "standing over a woman behind her with a belt wrapped around her neck pulling back on the belt with both arms raising her up onto her knees off of her hands.  She was clutching at the belt trying to get it loose to where she could breathe or scream.  It seemed like she was being strangled by the belt." Dkt. 10, Ex. 001 at Tr. 17-20.  When Officer Stewart realized what was happening, he drew his weapon and ordered Petitioner to step away from the victim.  Petitioner complied, and Officer Stewart handcuffed Petitioner.  Officer

Stewart assisted the victim in removing the belt from her neck while Officer Horning took Petitioner out of the room. *Id.* at 21-22.

Officer Horning testified that he was standing behind Officer Stewart when he first knocked on the victim's apartment door.  He heard a female scream and call for help. Officer Stewart checked the door and it was locked from the inside.  When Officer Horning saw that the door was locked, he moved to the window.  Officer Horning looked through the window trying to assess the situation inside. There was a crack in the blinds, and he had a restricted view of "a black male standing facing the door.  He was slightly bent over and appeared to have no clothes on.  I could only see from right below his belly button area of his abdomen. . . . bent over at the waist. . .  And the arms were in this fashion and like he was doing an exercise.  His arms were really tensed and he was pretty rigid."  Officer Horning testified that although he could see Petitioner's biceps and his forearms, he could not see any further than Petitioner's wrists.  He could, however, see the top of the victim's head and she would scream intermittently.  Officer Horning could not see the victim's face or see what was being done to her.  He testified that he thought Petitioner was "smacking a female, hitting a female" because of the screams.

The victim testified that she was having trouble recalling all of the details of the attack in context.  She further testified that she thought at one point that Petitioner put a gun to her head and she was terrified, thinking that he was going to kill her (Dkt. 10, Ex. 001 at Tr. 42). Officers Stewart and Horning testified that the victim was traumatized and disoriented after she was freed from the belt (Dkt. 10, Ex. 001 at Tr. 23-24; 67-68). Petitioner was naked and the victim was wearing a "night shirt" with her panties pulled down and hanging from her right ankle (Dkt. 10, Ex. 001 at Tr. 22).

On direct examination, Petitioner testified to the contrary. According to Petitioner, he left the victim's apartment to buy some marijuana for her. He was gone about four hours. Petitioner appeared at the victim's door at approximately 6:30 a.m. the following morning with the marijuana. The victim allowed Petitioner to come inside the apartment and they smoked marijuana together.

Petitioner further testified that he decided he wanted to take a bath and was in the process of doing so when the victim appeared at the bathroom door with his belt looped around her neck and the telephone in her hand.  She announced that she had called the police.  Petitioner got out of the tub and began to towel dry when the victim fell over a flower pot that was sitting in the hallway.  He left the bathroom and attempted to remove the belt from victim's neck.  The victim was resisting Petitioner's attempts to remove the belt when he heard a knock at the door and the victim yelled for help.  According to Petitioner, he opened the door and the officers walked into the apartment.

Petitioner testified that he told the officers that he had not done anything. Petitioner testified that he had an erection when the officers walked in because he "was participating in having sex with [the victim]." *See* Dkt. 10, Ex. 001 at Tr. 75-93.

On rebuttal, Officer Horning testified that Petitioner did not say anything when he and Officer Stewart entered the apartment.  Officer Horning also testified that after he took Petitioner into the bedroom to await the arrival of the officers to process the crime scene, Petitioner stated, "Man I need a cigarette, it's going to be my last one.  I know where I'm going" (Dkt. 10, Ex. 001 at Tr. 95).

On cross-examination, Petitioner testified that he did not recall having been interviewed by Officer Houck at police headquarters after his arrest.  Likewise, he testified

that he was never advised of his *Miranda* rights, and he did not sign anything. *See* Dkt. 10, Ex. 001 at Tr. 75-93. Officer Houck identified Petitioner as the man he spoke with at the Clearwater Police headquarters after visiting the crime scene on the morning the attack occurred.  *Id*. at 98.  According to Officer Houck, he read Petitioner his *Miranda* rights before questioning him.  *Id*. at 99. The State produced a copy of the consent form Petitioner signed waiving his *Miranda* rights (Dkt. 10, Ex. 001 at R. 124).  Officer Houck identified the form as the one he witnessed Petitioner sign waiving his *Miranda* rights.  *Id*. at 100-01.

Officer Houck further testified that Petitioner stated: "Beth said I tried to rape her but it's not like that."  *Id*. at 105. Petitioner informed Officer Houck that there had not been any previous sexual relationship between him and the victim.  *Id*.  Officer Houck testified that Petitioner told him that he was having intercourse with the victim and that the police came in and arrested him but he wasn't sure "exactly why."  *Id*. at 106.

Petitioner informed Officer Houck that the sex was consensual but also stated that the victim was saying "no, no, while this was happening so he stopped but then he started back up again."  *Id.* According to Officer Houck, when asked how the belt got around the victim's neck, Petitioner at first said "somehow the belt got around her neck."  *Id*.  On further questioning, Petitioner stated, "you look like a logical intelligent man, how do you think it happened?"  *Id.* Officer Houck testified that Petitioner then stated "when she said no, I stopped for a time and I started up again."  *Id*.  Petitioner then decided that he had nothing further to say.  According to Officer Houck, he was quoting Petitioner's statements verbatim.  *Id*. at 107.  The State rested, and trial counsel announced that he had no rebuttal.

As the testimony reflects, two police officers were eye witnesses to the crime. Given that the evidence at trial was overwhelming and the prosecutor stayed within the bounds of commenting on the evidence and inferences which could be drawn from the evidence, Petitioner was not deprived of a fair trial by the prosecutor's comments. *See DeChristoforo*, 416 U.S. at 642.

Petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure to object to the statements made by the prosecutor during closing argument, even assuming some deficiency in trial counsel's performance. Having failed to meet the prejudice prong of the *Strickland* test, Petitioner has not established that he is entitled to relief on this claim. *See Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

Petitioner has failed to establish that the state trial court's finding that he failed to meet *Strickland*'s two-prong test, implicit in its rejection of this claim, is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Petitioner is not entitled to § 2254 relief on this claim of ineffective assistance of counsel.

**Ground Five**

In Ground Five, Petitioner faults trial counsel for failing to order the entire transcript of the trial, specifically the jury selection and the *Nelson*[2] hearing. Petitioner does not point to any specific claim of impropriety with regard to jury selection.  The record reflects that on March 12, 1999, Petitioner filed a motion to dismiss trial counsel (Dkt. 10, Ex. 001 at R. 21).  According to Petitioner, he wanted to dismiss trial counsel "for a lack of competent

---

[2]*Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

[sic] an [sic] a conflict of interest because [trial] counsel told Petitioner he [would] be found guilty at trial and [trial] counsel never discuss [sic] a defense strategy" with him (Dkt. 1, Ex. A at 10).

In Florida, when a criminal defendant requests that the state circuit court discharge his court-appointed attorney for ineffective assistance, the state court is obligated to determine whether adequate grounds exist for the attorney's discharge. See *Hardwick v. State*, 521 So. 2d 1071, 1074-75 (Fla. 1988) (holding that a motion to discharge counsel for incompetence requires that the Florida court inquire into the actual effectiveness of counsel); *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

There is nothing in the record which indicates that a hearing was held on Petitioner's *pro se* motion. According to Petitioner, however, he renewed his request to dismiss trial counsel at the beginning of the trial and "the trial court conducted an inadequate *Nelson* inquiry."  However, Petitioner fails to provide any factual support for his allegation that the hearing was inadequate.  Notably, there is nothing in the transcript which indicates that when Petitioner appeared for trial, he objected to being represented by trial counsel. Moreover, as Respondent points out, the transcript of the sentencing hearing reflects Petitioner's satisfaction with trial counsel and his willingness to have trial counsel represent him in a trial scheduled in another case (Dkt. 10, Ex. 001 at Tr. 175-181).

When Petitioner raised this claim in his Rule 3.850 motion, the state trial court rejected it, finding:

> Next, Defendant contends that counsel was ineffective for failing to order a "complete transcript of the trial court proceedings," including pre-trial hearings on a *Nelson* inquiry and the voir dire proceedings. To present a facially sufficient claim, Defendant must pinpoint the alleged errors during these proceedings. *See Thompson v. State*, 759 So. 2d 650 (Fla. 2000); *Ferguson v. Singletary*, 632 So. 2d 53 (Fla. 1993). Defendant failed to allege

any specific errors that occurred at these times and thus his claim is facially insufficient. Therefore, this claim is denied.

Dkt. 10, Ex. 10 at 7.

Likewise, Petitioner complains that trial counsel was ineffective for failing to insure that a transcript of the jury selection was ordered. The record reflects that six jurors and one alternate were picked from a panel of 28 venire members.  According to Petitioner, "during [the] voir dire proceedings [trial] counsel made many objections, jurors were struck, and there were several side-bar conference[s]" (Dkt. 1, Ex. A at 11).  He states that he does not know if there were any challenges to the jury selection process which should have been raised on appeal because trial counsel failed to order a transcript of the proceedings.  Petitioner fails to provide any basis for the Court to conclude that he was prejudiced because the voir dire transcript was not ordered.

 To secure a hearing on his claims, a habeas petitioner must allege facts, which, if true, would entitle him to habeas relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc). The law does not require a federal habeas court to hear a claim based entirely on conclusory allegations wholly devoid of specifics. *See Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994) (en banc). Petitioner fails to overcome the strong presumption that trial counsel exercised reasonable professional judgment in directing the clerk to prepare the record for appeal. *See Grayson v. Thompson*, 257 F.3d 1194 1218 (11th Cir. 2001).

A state prisoner seeking habeas relief in a federal court carries the burden of establishing that the state court's resolution of his claim was contrary to, or an unreasonable application, of federal law.  Petitioner has not met this burden.

**Ground Seven**

Here, Petitioner contends that trial counsel was ineffective for failing to cross-examine Nurse Practitioner Rita Hall regarding her medical report which, Petitioner asserts, contradicted the victim's statement to the arresting officers (Dkt. 1, Ex. A at 15). In its order rejecting this claim, the state trial court found:

> Finally, Defendant contends that counsel was ineffective for failing to properly cross-examine witness Rita Hall. Defendant contends that Ms. Hall's report contained false and inconsistent statements contrary to her trial testimony. In addition, Defendant contends that counsel erred by not cross-examining Ms. Hall regarding her inconsistent statements. Upon review of the record, the Court acknowledges that Ms. Hall's deposition was conducted on March 4, 1999, in which she discussed her report in great detail. [*See* Exhibit 11: Transcript of Deposition.] Furthermore, Ms. Hall's trial testimony is consistent with her deposition testimony. [*See* Exhibit 10.] However, the Court has been unable to locate any inconsistent statements on which counsel could have based his cross-examination.
>
> Additionally, Defendant argues that Ms. Hall's report was inconsistent with her trial testimony, in that the report stated that Defendant licked the victim's anus, had two different types of penetration with a penis and an unknown object, that victim was forced to put her hands on Defendant's penis and that Defendant ejaculated into a condom. [*See* Exhibit 12: Medical Report Submitted as Exhibit B with Defendant's Motion.] First, it is unclear where the information contained in the report was derived from, but it appears to contain information that a victim would give regarding the offense. However, upon careful review of the report, it is true that the report indicates that the Defendant licked the victim's anus, penetrated her anus with his penis and a foreign body, Defendant placed his hands on her breasts and forced the victim to put her hands on his penis. [See Exhibit 12.] However, the report does not state that Defendant ejaculated into a condom. [See Exhibit 12.] In fact, the report indicates that Defendant never ejaculated. [See Exhibit 12.] Furthermore, upon reviewing the report, the deposition and the trial testimony, the Court is unable to locate inconsistent testimony that would provide an effective basis for counsel's cross-examination. The Court notes that Ms. Hall was not questioned about these details during her trial or deposition. [*See* Exhibit 11.]  [*See* Exhibit 10.] Therefore, the witness could not have made inconsistent statements.
>
> Additionally, it is highly unlikely that if this evidence were presented at trial the outcome of the trial would have been different. Rather, the Court finds that this evidence would have hindered Defendant's case. Therefore,

> Defendant has failed to prove that counsel's performance was deficient and that he suffered prejudice as a result of this deficiency. Moreover, the Court finds no reasonable probability existed that Defendant's trial outcome would have been different if this alleged error had not occurred. This claim is without merit and is denied. Jones contends that Hall's report contained false and inconsistent statements contrary to her trial testimony.

(Dkt. 10, Ex. 010 at 8-9).

The record supports the state trial court's findings.  The only assertion in the petition not addressed by the state trial court is Petitioner's statement that Nurse Hall falsified her report when she learned that the attacker was a black man.  Petitioner contends that details in the medical report that were not provided to the officers by the victim at the scene of the attack "would have indicate [sic] and suggest that Ms. Hall had made false written statements in her examination report that . . . would point and suggest that [Petitioner] committed this alleged sexual attack once she heard that [Petitioner] was a Black male" (Dkt. 1, Ex. A at 15). Petitioner offers no factual support whatsoever in support of this assertion.

As the state trial court pointed out, the information in Nurse Hall's report of the victim's examination was not presented to the jury.  Thus, assuming that Nurse Hall's report is "very colorful in details," Petitioner could not be prejudiced at trial by information that was not provided to the jury and it would not be objectively unreasonable for trial counsel to conclude, as he well might under the circumstances, that given the nature of the offense, focusing the jury's attention on "colorful" details of the attack would not favor Petitioner's cause.  Petitioner has not demonstrated a sufficient basis in fact to meet either prong of the *Strickland* test.

The state court's decision on this claim was not "contrary to" clearly established federal law as determined by the United States Supreme Court, nor did it involve an

"unreasonable application" of such law. 28 U.S.C. § 2254(d)(1). Petitioner has failed to establish any grounds for federal habeas relief on this issue.

**Ground Eight**

Couching this issue as a double jeopardy claim, Petitioner asserts that the state trial court erred in sentencing him "under the same essential element of the use of a weapon as to both the habitual felony offender [enhancement] and the prison releasee reoffender [enhancement]."  This claim is also asserted as the underlying substantive claim for the ineffective assistance of appellate counsel claim asserts in Ground Ten.  In the Rule 3.850 proceedings, the state trial court found:

> Defendant alleges the Court erred in sentencing him as both a habitual felony offender and a prison release reoffender, with the sentences to run concurrent. [See Exhibit 1.] Defendant contends that the Court in *Grant v. State* did not permit the trial court to impose an equal sentence pursuant to the habitual felony offender statute and a prison release reoffender statute. *Grant v. State*, 770 So. 2d 655 (Fla. 2000). Defendant is partially correct in this assertion, but he clearly missed the finer points of the case. In *Grant*, the Court held that the prison releasee reoffender act (PRRA) "authorizes the court to deviate from the [PRRA's] sentencing scheme to impose a greater sentence of incarceration" and that a trial court may not impose a sentence of equal length under the habitual felony offender statute. *See id.* at 659. In other words, a Court is authorized to "impose a prison releasee reoffender sentence and a habitual felony offender sentence . . . if the habitual felony offender sentence is greater." *See State v. Wilson*, 26 Fla. L. Weekly D1573, n.1 (Fla. 2nd DCA June 20, 2001). *See also Walls v. State*, 765 So. 2d 733 (Fla. 1st DCA 2000); *Brown v. State*, 784 So. 2d 527 (Fla. 4th DCA 2001); *Kimbrough v. State*, 776 So. 2d 1055 (Fla. 5th DCA 2001).
>
> For easy clarification, the Court will evaluate each of Defendant's sentences individually. In count one, Defendant was sentenced to thirty (30) years in state prison as a habitual felony offender. [*See* Exhibit 1.] Defendant was also sentenced as a prison releasee reoffender on count one, but the minimum sentence under the PRRA is fifteen (15) years. As such, Defendant's habitual felony offender sentence is greater than the prison releasee reoffender sentence and, thus, his sentence is legal.
>
> However, the sentence in count two presents a different scenario. Defendant was convicted of sexual battery, a life felony. [*See* Exhibit 1.] Accordingly,

Defendant was sentenced to life as a habitual felony offender. Also, Defendant received a minimum term of life under the prison releasee reoffender sentence. Therefore, it is evident that Defendant has received equal sentences pursuant to the habitual felony offender and the prison releasee reoffender statutes. As the Court has previously stated, the sentence can only be legal if the habitual felony offender sentence is greater than the prison releasee reoffender sentence. Therefore, as to COUNT TWO ONLY, Defendant is entitled to relief. As such, the Court orders the Clerk to amend count two only, on the April 6, 1999 judgment and sentence, to strike the habitual felony offender classification. The Court orders that the prison releasee reoffender sentence on count two remain in full force and effect under the law and shall not be disturbed.

Dkt. 10, Ex. 10 at 1-2.

Respondent argues that this Court is precluded from addressing the substance of Ground Eight because it raises sentencing issues which are not cognizable in a federal habeas corpus action.  Section 2254 specifically requires a federal court to entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  A federal habeas petition grounded on issues of state law provides no basis for habeas relief.  *See Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (stating that "a habeas petition grounded on issues of state law provides no basis for habeas relief . . . . [i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures.") (citations omitted).  The Eleventh Circuit has emphasized that "mere errors of state law are not the concern of [a federal] [c]ourt unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Harmon v. Barton*, 894 F.2d at 1276 (quoting *Dugger v. Adams*, 489 U.S. 401, 410 (1989)).  Thus, Ground Eight is not cognizable under § 2254 and should be denied.

**Ground Nine**

In this claim Petitioner makes the same argument presented in Ground Five, asserting that appellate counsel was ineffective for failing to request the voir dire transcript and the transcript of the *Nelson* hearing be included in the appellate court record. The controlling legal principles under *Strickland* govern claims of ineffective assistance by appellate counsel. *See Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992).

This claim was raised by Petitioner in his state habeas petition. Although the state district court denied the petition without written opinion, the Eleventh Circuit has held that the decision is entitled to the same deference as if it had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corr.*, 278 F.3d 1245 (11th Cir. Jan. 22, 2002),

To prevail on this claim, Petitioner must first show that appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259 (2000). However, appellate counsel who files a merits brief need not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under Strickland for omitting a particular argument. *Smith v. Robbins*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")).

To demonstrate prejudice, Petitioner must establish a reasonable probability that, but for appellate counsel's alleged error, he would have prevailed on appeal. *Smith v.*

*Robbins*, 528. U.S. at 286. Petitioner must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of appellate counsel. *Id.* at 289.

Where a state court's adjudication of a claim of ineffectiveness of counsel represents the resolution of an underlying state law issue, a very high degree of deference is owed to that determination. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984), *modified*, 731 F.2d 1486, *cert. denied*, 469 U.S. 956 (1984).

Petitioner's state habeas petition is devoid of facts which would support, if proven, both prongs of *Strickland*. It is objectively reasonable under *Strickland* to reject an ineffectiveness claim not pleading facts showing both deficient performance as well as prejudice. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (general allegation of ineffective assistance of counsel is insufficient; petitioner must allege specific facts establishing both unreasonable-representation and prejudice prongs of ineffective assistance standard).

As in Ground Five, Petitioner speculates that had appellate counsel ordered transcripts of the jury selection proceedings and the *Nelson* hearing, "there is a reasonable probability that the outcome of the [appeal] would have been different" (Dkt. 1, Ex. B at 22). Petitioner states that he "wrote to [appellate] counsel and told him about the 'prejudicial errors' that occurred before the commencement of trial such as (1) inadequate *Nelson* inquiry when Petitioner brought to the [state trial] court's attention that he wanted to discharge his counsel; (2) improperly exercised peremptory challenge during jury selection, a juror was improperly struck without cause; and (3) side-bar conference violation" (Dkt. 1, Ex. B at 21). According to Petitioner, appellate counsel informed him that "without the missing transcripts; [sic] those errors and issue cannot be raised on appeal." *Id*.

Petitioner's claim does not establish the prejudice prong of the *Strickland* test. Petitioner does not present any factual support for this claim in his federal petition, his Rule 3.850 motion, or his state habeas petition that, if proven, would show that any alleged omission of appellate counsel resulted in actual prejudice to him. Accordingly, the state district court's rejection of this claim has not been shown to be an unreasonable application of *Strickland*. Where there is no prejudice, no relief is due. *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

The Court finds that Petitioner has failed to establish that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). This claim, therefore, lacks merit.

**Ground Ten**

Petitioner asserts that appellate counsel was ineffective for failing to argue that the state trial court erred in sentencing him "under the same essential element of the use of a weapon as to both the habitual felony offender [enhancement] and the prison releasee reoffender [enhancement]" on direct appeal. This sentencing issue was couched as a double jeopardy claim in Ground Eight. When Petitioner raised this issue in his state habeas petition, the state district court rejected it without written opinion.

The crux of Petitioner's argument is that because there was a "conflict between the district courts at the time concerning the [PRRPA]," appellate counsel was ineffective by failing to challenge this issue on appeal. Eleventh Circuit law forecloses the contention that an attorney's failure to anticipate a change in the law is ineffective assistance of counsel.

*See United States v. Ardley,* 273 F.3d 991, 993 (11th Cir. 2001). Counsel is not required to be prescient.  *See also Ross v. State*, 796 So. 2d 1185 (Fla. 4th DCA 2001) (affirming denial of petitioner's request for post-conviction relief based on claim that counsel was ineffective in failing to anticipate the Florida Supreme Court's decision strictly construing the PRR statute); *Bell v. State*, 787 So. 2d 120, (Fla. 2d DCA 2001); *Johnson v. Wainwright,* 463 So. 2d 207, 209 (Fla. 1985). Moreover, "[b]ecause law is not an exact science, an ordinary, reasonable lawyer may fail to recognize or to raise an issue, even when the issue is available, yet still provide constitutionally effective assistance." *Pelmer v. White*, 877 F.2d 1518, 1523 (11th Cir. 1989) (citing *Engle v. Isaac*, 456 U.S. 107, 133-34 1981)).

The record simply does not support Petitioner's assertion that appellate counsel's performance was deficient in this regard. Thus, Petitioner has failed to satisfy the deficiency prong of the *Strickland* test.  *Strickland v. Washington,* 466 U.S. at 687.

The Court finds that Petitioner has failed to establish that the state district court's rejection of this claim is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's claim lacks merit.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.   The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2.  The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on March 31, 2006.

/s/ James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

SA:jsh
Copy to: Petitioner/Counsel of Record